UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DIANE SENA,

                              Plaintiff,

        v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                              Defendant.

Case No. 2:16-cv-00896-APG-GWF

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff's Motion for Reversal and/or Remand (ECF No. 22), filed on March 8, 2017.  Defendant filed her Cross Motion to Affirm (ECF No. 23) and Response (ECF No. 24) on April 6, 2017.

## BACKGROUND

### A.    Procedural History

On December 30, 2009, Plaintiff Diane Sena filed an application for a period of disability, disability insurance benefits, and supplemental security income.  *See Administrative Record* ("AR") 288-98.  The Commissioner denied Plaintiff's application initially on May 17, 2010.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 163.  A hearing was conducted on February 8, 2012.  AR 75.  On March 15, 2012, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act.  AR 115-32.  Plaintiff requested that the Social Security Administration Appeals Council review the ALJ's March 15, 2012 decision.  AR 217.  The Appeals Council granted her request for review, vacated the decision, and remanded to an ALJ for resolution of issues regarding Plaintiff's residual functional capacity, the ALJ's evaluation of Plaintiff's treatment, and the ALJ's evaluation of Plaintiff's credibility.  *See* AR 133-38.  A second hearing was conducted on April 28, 2014.  AR 39-74.  The ALJ issued her decision on June 6, 2014 and again found that Plaintiff was not disabled as

defined in the Social Security Act.  AR 19-38.  On February 25, 2016, the Appeals Council denied Plaintiff's request for review of the June 6, 2014 decision and Plaintiff filed this action for judicial review.  This matter has been referred to the undersigned for a report of findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).

**B.     Factual Background**

**1.     Plaintiff's Disability/Work History Reports and Hearing Testimony**

Plaintiff was born on October 27, 1960.  AR 43.  She is 5'7" tall and weighed in the range of 150 pounds.  She completed the twelfth grade.  At the time of the April 28, 2014 hearing, she resided with her boyfriend in an apartment in Fernley, Nevada.  AR 48.  Plaintiff worked as a patient account representative or health insurance clerk from 1979 until April 2002. AR 400, 402.  She worked as an in-home healthcare assistant from May 2008 to May 2009.  AR 400-401.  She performed this homecare service for her boyfriend's mother.  AR 44.

Plaintiff alleged that she became disabled on January 1, 2008.  AR 22, 288.  She listed "neck, shoulder, lower back, Carpal Tunnel on both hands/wrist," and, "arthritis on neck and spine" as her disabling conditions.  AR 374.  In her February 1, 2010 function report, Plaintiff reported that she could only lift about 5 pounds, bending was limited, standing was limited to 5 to 10 minutes, the use of her hands was very limited, and she could only walk about 50 feet before needing to rest.  AR 388.  She reported that her family helped with cooking.  She did not perform household chores and did not drive an automobile.  AR 383.

Plaintiff's sister completed a third-party function report on February 2, 2010.  AR 389-396.  She reported that Plaintiff did the "bare necessities" on a daily basis.  AR 389.  Plaintiff needed help with cooking, cleaning, and grocery shopping.  She not participate in social activities and spent her time watching television.  She rarely drove an automobile or went outside.  AR 390-396.  Plaintiff's nieces also provided written statements that they helped Plaintiff with laundry and hygiene, and visited her frequently because she was depressed.  AR 428-429.  Plaintiff's boyfriend reported that that he did all of the household chores, cooking, and grocery shopping.  He kept track of Plaintiff's medical appointments and drove her to many of her appointments AR 432.

In a June 2010 disability report, Plaintiff stated that she had constant pain, swelling, muscle spasms and loss of grip strength. AR 410. She had a constant burning, radiating pain in her shoulders and both arms. Her condition affected her ability to sit, stand, walk, lift, and carry things. She had difficulty bathing and changing clothes. She was able to cook simple meals, but did not clean. She did not visit with friends, family or attend social events. She did not drive. AR 413. Plaintiff reported that she dropped things and had reduced range of motion. She needed to lay down and constantly shift her body to remain comfortable. She suffered from anxiety and depression, and had feelings of sadness, worthlessness, and low self-esteem which affected her ability to focus. AR 410.

Plaintiff testified at the February 8, 2012 hearing that she stopped working due to the pain in her arms and neck. AR 81. Pain medications were somewhat helpful. The medications did not cause side effects, but she felt dizzy every time she stood up. AR 86. She spent most of the day on the couch to take pressure off her neck and bottom. She could perform "little spurts" of activity such as loading dishes into the dishwasher. However, most of the cleaning and cooking was performed by her sister and nieces. AR 87. She was able to drive, but rarely did so because of spasms in her wrists and arms. AR 88. Plaintiff traveled to California to see her neck and arm doctor. Her boyfriend or sister drove her to and from these appointments. AR 89.

Plaintiff testified that she had severe pain in her lower back and bottom. AR 90. Her legs became completely numb if she stood more than 5 to 10 minutes. She was prescribed medication for her back pain, but was unable to obtain other treatment due to lack of insurance. AR 91. It was very painful to sit for more than a half-hour to an hour. She underwent cervical fusion surgery in 2005 or 2006. After that surgery, she felt like she had a yoke around her neck and she had to frequently lie down to rest her shoulders and neck. She had spasms in her arms whenever she used them. She lacked stamina and felt depressed. She could walk no more than half a block. Sitting was very uncomfortable and she constantly had to shift her weight. She could lift 10 to 20 pounds. AR 92-93.

Plaintiff testified that her lower back pain and leg numbness was the biggest factor that prevented her from working. AR 94. She had had carpal tunnel surgery on both wrists. She still

3

had difficulty grasping objects and frequently dropped items such as dishes, pencils and pens. She could use her hands to get dressed and was able to write, but got spasms from using her arms. She could only write for a short period before a burning sensation started. She was unable to operate a computer keyboard, but was able to hold cigarettes. AR 95-96. Repetitive tasks caused her right arm to be very painful, and nerve pain shot up her arms. AR 97. Plaintiff testified that she spent an hour or two during the day performing household tasks such as doing dishes or laundry. She didn't want to put her body into stress, however, so she did as little as possible. AR 98. She had difficulty performing overhead tasks because of her inability to hold objects. AR 99.

Plaintiff testified at the April 28, 2014 hearing that she traveled to northern California to see her doctors every 60 days. Her boyfriend drove her or she took the bus. AR 50. Medication relieved her pain enough for her to do more things during the day than she would have otherwise been able to do. AR 58. She did very little shopping or cleaning. It was hard for her to walk because her legs went numb. AR 52. She went to church, watched television, took care of two small dogs and engaged in social activity with family. AR 53-54. Her doctor recommended that she get a cane to assist her walking, but she only used it for walking outside. She could not sit in one position for more than 10-15 minutes without getting pain in her buttocks. She lays down most of the time. AR 55. She could not stand for more than 10 to 15 minutes, at which point her legs would go numb and she would collapse. She was unable to work because she could not stand more than 10 minutes, she had spasms in her arms, and she had arthritis and heaviness in her neck from her surgery. AR 56.

### 2.    Vocational Expert Testimony

Vocational Expert Carly Coughlin testified at the February 8, 2012 hearing that Plaintiff's past work as a home health aide was medium work with an SVP of 4, and her past work as a patient account representative was sedentary work with an SVP of 4. AR 104. The ALJ asked Ms. Coughlin to assume a "younger individual," age 47, with a 12th grade education, and with the same past work as Plaintiff. The individual would be "limited to a light level of work, limited in terms of posturals to occasional. In terms of manipulative or stretching and

1   reaching, overhead reaching should be avoided and limited to frequent, but not constant.  Also,

2   right hand manipulation should be limited to frequent, but not constant.  Hazards should be

3   avoided.  And in terms of non-exertional, we would limit a person to the semi-skilled level of

4   operation." AR 106.

5         Ms. Coughlin testified that the hypothetical individual would not be able to perform

6   Plaintiff's past work which required frequent right-hand manipulation.  She also testified that

7   most jobs in the light category require frequent use of hands.  A person with these limitations

8   could, however, perform the job of receptionist, DOT 237.367-038, which was sedentary work

9   with an SVP of 4, and for which substantial numbers of jobs existed in the national and Nevada

10  economies.  Other available sedentary jobs included surveillance systems monitor, DOT

11  379.367-010, and hotel clerk, DOT 238.367-038.  AR 106-107.  Plaintiff's counsel asked

12  whether the hypothetical individual could perform any of the jobs if she was unable to work for

13  approximately 10 to 15 minutes per hour, missed approximately three days of work per month,

14  or was tardy or otherwise absent an average of a half-day per week.  AR 108-109.  Ms. Coughlin

15  testified that an individual with those limitations would be unable to work.  Plaintiff's counsel

16  asked what the effect would be if the individual "could do no more than occasional fine and

17  gross manipulation with the dominant right hand."  Ms. Coughlin stated that the individual could

18  still work as a surveillance systems monitor, but could not perform the other jobs she identified.

19  AR 108.  (The Appeals Council reversed the ALJ 2012 decision, in part, based on evidence that

20  there were only 40 surveillance system monitor jobs in Nevada.  AR 134).

21        Vocational Expert Connie Guillory testified at the April 28, 2014 hearing.  She classified

22  Plaintiff's past relevant work as insurance clerk, DOT 214.362-022, skilled sedentary work with

23  an SVP of 5.  However, Plaintiff reported that she performed this work at the light level.  AR 64.

24  She also classified Plaintiff's past work as telephone operator, DOT 235.662-022, semi-skilled,

25  sedentary work with an SVP of 3.  AR 64-65.  The ALJ asked Ms. Guillory to assume a

26  hypothetical individual, age 47, with a 12th grade education, who would be limited to a light

27  level of work in terms of lifting and carrying; would further be limited to work that did not

28  require any repetitive climbing; would be limited to occasional performance of posturals; would

5

need to avoid working at heights or with dangerous moving machinery; would be limited to occasional manipulation; but frequent as far as handling and fingering and overhead with her upper extremities.  The individual would also be able to perform simple, detailed, and complex tasks; and would have no limitation in her relationships with the public, supervisors or co-workers.  AR 66.

Ms. Guillory testified that the hypothetical individual would be able to perform Plaintiff's past work as an insurance clerk and telephone operator.  AR 66.  The individual could also perform other jobs that exist in substantial numbers in the national economy, including (1) office clerk, DOT 209.562-010, semi-skilled light work with an SVP of 3; (2) hand packer, DOT 559.687-074, unskilled light work with an SVP of 2; and (3) folder, DOT 686-685.030, unskilled light work with an SVP of 2.  AR 67.  The ALJ then asked:

> Q.    Now, if, in fact, the limitation on handling and the fingering was occasional, as opposed to frequent, would that have any effect on the alternative jobs or the past relevant work?
>
> A.    Yes, your honor.  We would have – at the light duty level, we would have alternative jobs, but it would be different alternate jobs for the ones I've listed.
>
> Q.    Okay.  But the insurance clerk and telephone operator would be okay?
>
> A.    No, your honor.  Those would be eliminated as well, the past work, as well as the alternate jobs I've listed.

AR 67-68.  The ALJ did not ask Ms. Guillory what alternate jobs the hypothetical person could perform if she was limited to occasional handling and fingering.  Plaintiff's counsel asked whether the individual would be able to perform Plaintiff's past work or the alternative jobs if she would need to take a 5 to 10 minute break after using her hands to perform tasks for 10 to 15 minutes.  AR 69.  Ms. Guillory testified that an individual with this limitation would not be able to perform any competitive work.  AR 69-70.

. . .

. . .

### 3.    Medical Records and Reports.

Plaintiff's primary treating physician, Dr. Richard A. Nolan, an orthopedic surgeon, began treating her in December 2001.  AR 411, 424.  In  a "Primary Treating Physician's Progress Report," dated December 10, 2008, Dr. Nolan described Plaintiff's cervical spine complaints as follows:  She had aching, throbbing, burning pain with a feeling of tightness located in the paracervical musculature bilaterally which extended into the trapezius, but not to the upper interscapular area. The pain radiated down to the mid arm bilaterally, greater on the right than the left.  Plaintiff rated her pain from 3/10 to 8/10, and stated that it was aggravated by repetitive use of the upper extremities, particularly with prolonged positioning of the cervical spine, such as when reaching up and out, by doing table, desk, computer or driving activities, and by lifting and carrying.  Plaintiff awoke three to four times per week at night due to pain. She was cautious with any lifting, carrying, pushing, pulling, twisting, turning, and sustained grasping.  She used medications and activity modification, pacing and avoidance, and unloading of the spine to help decrease her symptoms. AR 469.  Plaintiff complained of spasms in the right hand resulting in flexion of the three ulnar digits.  There was numbness in the three right central digits.  Her symptoms were intermittent and activity related.  She also had numbness extending from the neck into the right shoulder.  She awoke three to four times per week with tingling in her right hand.  She denied any tingling or numbness in the left hand.  There was moderate grip strength loss in the right hand with good grip strength on the left.  AR 469.  Plaintiff was prescribed Hydrocodone, Desyrel, Valium, Soma, Zanaflex, and Tramadol.  AR 470.

On physical examination, Dr. Nolan noted that Plaintiff's left shoulder was up as compared to the right.  There was tightness in the paravertebral musculature bilaterally, with slight tenderness.  There was moderate tightness in the trapezius bilaterally.  Cervical spine range of motion was as follows:  Ff 25 degrees, ext 30 degrees, rot 50 degrees/40 degrees, lat bend 10 degrees/15 degrees.  Extension and rotation on either side caused ipsilateral junction discomfort.  There was no tenderness, deformity or effusion in either wrist.  There were scars at the base of her palms from carpal tunnel release surgeries.  Her grasp was moderately weak on the left as compared to the right.  Carpal and cubital Tinel's testing was negative bilaterally.  Radial pulses

7

were 2+.4+.  There was excellent capillary filling with normal hair pattern and good skin turgor.  AR 470.

Dr. Nolan opined that Plaintiff's cervical spine symptoms persisted at a significant level and that she would benefit from physical therapy.  He referred her to a physical therapy program consisting of eight visits spread over two months.  He continued Plaintiff on medication and activity modification.  AR 470.  In a March 2009 progress report, Dr. Nolan stated that following physical therapy, Plaintiff had improvement in her cervical range of motion and improved sleep and less pain.  He continued her on prescribed medications, commonsense precautions on all activities and a home exercise program.  AR 465.

There are treatment records from Dr. Nolan's office from April 26, 2010 to November 28, 2011, and from March 16, 2012 to August 20, 2012.  AR 541-71.  On April 26, 2010, Dr. Nolan noted that Plaintiff had symptoms and examination findings consistent with his findings in late 2008 and 2009.  AR 569-570.  On August 16, 2010, he reported that carpal tunnel testing was positive in Plaintiff's right wrist and mildly positive in her left wrist.  AR 564.  On February 14, 2011, Dr. Nolan noted that Plaintiff experienced multiple acute flare ups due to cold and damp weather.  AR 555.  On November 28, 2011, Plaintiff continued to experience numbness that radiated to her fingers.  AR 543.

Dr. Nolan and his physician's assistant completed a "Treating Physician Questionnaire" on February 1, 2012.  AR 641-643.  Dr. Nolan stated that Plaintiff was not a malingerer and that her impairments could be expected to last at least 12 months.  Emotional factors did not contribute to the severity of her symptoms or functional limitations, but depression affected her physical condition.  AR 641.  Plaintiff was not capable of performing even low stress jobs because of her ongoing pain symptoms which would constantly interfere with her attention and concentration.  AR 642.  She had decreased grip strength, making her unable to perform prolonged flexion or extension.  Dr. Nolan rated her grip strength to be 3/5 bilaterally.  Plaintiff needed to be able to shift positions at will from sitting, standing, or walking, and would need to take unscheduled 15 minute breaks hourly during an 8-hour work day.  She was able to sit for at least 6 hours and stand/walk for about 4 hours during an 8-hour work day.  She could squat, walk

1    on her toes, and walk on her heels.  She could lift and carry less than 10 pounds frequently, but

2    could never lift over 10 pounds.  AR 643.

3         In a March 16, 2012 progress report, Dr. Nolan stated that Plaintiff "continues to

4    experience an aching and burning pain with a stabbing component that is constant in the CT

5    junction" and that "[a]ggravation occurs with repetitious use of the upper extremities, prolonged

6    positioning of the cervical spine in a downward gaze, lateral rotation to either side, reaching up

7    or out at or above chest level."  AR 654.  Plaintiff experienced relief with activity modification,

8    avoidance, and oral medication.  Carpal tunnel testing in the right wrist was positive.

9    Finkelstein's testing was negative and cubital tunnel testing was negative as well.  AR 655.

10        Dr. Nolan completed a "Residual Functional Capacity Questionnaire" on August 20,

11   2012.  He stated that in an 8-hour work day, Plaintiff could sit at one time for about 30 minutes.

12   She could stand and walk at one time for 30 minutes.  During an entire 8 hour workday, she

13   could sit, stand, and walk for less than 2 hours with respect to each act.  Plaintiff could

14   frequently lift up to 10 pounds, occasionally lift between 11 and 20 pounds, but never lift more

15   than 20 pounds.  She could occasionally use her hands for handling, and for pushing and pulling.

16   She could rarely use them for fine manipulation.  Her manual dexterity was in the bottom 10 %

17   on the right and left.  Dr. Nolan stated that Plaintiff could occasionally bend/stoop, squat, crawl,

18   reach up, reach forward, crouch and kneel.  She could never climb.  AR 644.  She had no

19   limitations regarding the repetitive movement of her feet.  Dr. Nolan found objective signs of

20   muscle spasm and spinal deformity.  He checked the boxes which stated "Marked – There are

21   serious limitations in activities precipitating pain (more than 2 standard deviations from the

22   mean[,]" and "Extreme – There is major limitation in activities producing pain (no useful ability

23   to function)."  He listed Plaintiff's other impairment-related physical limitations as spinal

24   stenosis, bilateral carpal tunnel, and fusion of the neck.  Dr. Nolan stated that the earliest

25   medically supported date to which these limitations applied was December 1, 2010.  AR 645.

26        Dr. Nolan saw Plaintiff again on November 11, 2013.  Plaintiff reported ongoing aching,

27   burning and throbbing in the neck.  Her symptoms were almost constant and activity related.  At

28   best, the symptoms were a 4 on a scale of one to ten.  At worst, they were an 8.  She was

awakened two to three times a night by her symptoms.  Aggravating factors were reaching up or
out, grasping, twisting, and turning  AR 700.  On physical examination, Dr. Nolan noted that
Plaintiff had normal ranges of motion and grip strength on both the left and right wrists.  AR
701.  Dr. Nolan saw Plaintiff again on January 6, 2014 and noted substantially the same
complaints and physical examination findings.  AR 702-703.

Dr. Richard Gasparre examined Plaintiff on May 4, 2010 at the request of the Bureau of
Disability Adjudication.  AR 485-87.  Plaintiff complained of neck pain with right upper
extremity radicular symptoms, right sided sciatica, and right carpal tunnel syndrome.  She stated
that her neck problems had begun more than 10 years previously when she developed neck pain
with radiculopathy due to poor ergonomics.  The pain worsened over time and she had cervical
fusion surgery in 2006.  Following the surgery, she had neck pain and burning pain down her
right arm.  She had problems with activities that involved her arms and hands.  She had problems
reaching overhead, and trouble grasping with her hands, especially the right.  Several rounds of
physical therapy had not helped.  She was taking pain and muscle relaxant medications which
helped with the pain. AR 485-486.  Plaintiff complained of carpal tunnel syndrome affecting the
right hand.  She had carpal tunnel surgery on both wrists in 2005/06.  The surgery was successful
on the left, but not on the right.  The combination of her cervical radiculopathy and right carpal
tunnel syndrome made it difficult to use her right hand, although she was able to write and hold
cigarettes.  She also complained of right sided sciatica.  The pain came and went and she used a
cane to help take pressure off the area.  She did not receive specific treatment for this condition,
but the pain medications helped.  She had intermittent radiating pain into the right leg.  AR 485.

On physical examination, Dr. Gasparre noted that Plaintiff was a well-developed, well-
nourished female.  She sat on the examination table in no acute distress and was oriented to
person, place, time, and reason for visit.  Examination of the neck revealed tenderness to
palpitation from C3-7 midline to bilateral trapezius muscles, right worse than left.  There were
no palpable masses or muscle spasms.  Lateral flexion was 30 degrees right and left with
moderate pain in each direction.  Forward flexion was 60 degrees with moderate pain.  Extension
was to 30 degrees with slight pain.  Rotation was 45 degrees bilaterally with slight pain.

Plaintiff's left upper extremity was normal in appearance. There was full range of motion throughout with slight pain in the neck with shoulder abduction and forward flexion. Strength was 5/5 throughout. Sensation was intact throughout. DTRs were 1+ throughout. There was negative Tinel's and Phalen's signs. Grip strength was 5/5. There was normal appearing gross and fine motor function of the hand and fingers. The right upper extremity was also normal in appearance. There was full range of motion throughout with slight pain in the neck with shoulder abduction and forward flexion. Strength was 5/5 throughout. Sensation was slightly decreased over the mid forearm through the fingers, but was otherwise intact throughout. DTRs were 1+ throughout. There were equivocal Tinel's and Phalen's signs. Grip strength was 5/5. There was normal appearing gross and fine motor function of the hand and fingers. AR 486.

Examination of the back revealed slight tenderness to palpation of the right L5-S[1] paraspinous muscles. Range of motion examination showed flexion to 90 degrees with slight pain, extension to 30 degrees with slight pain, rotation to right and left to 45 degrees with slight pain, and lateral flexion to 30 degrees right and left with slight pain. There was negative straight leg raising on right and left. AR 487. Examination of the lower extremities was within normal limits. Plaintiff had a normal gait without limp. She used a cane for support, but did not need it for walking. She was able to toe walk, heel walk, and tandem walk without difficulty. She was able to squat and rise, but reported low back pain and the need to hold onto the table. She was able to get on and off the examination table without difficulty or assistance. AR 487.

Dr. Gasparre completed a residual functional capacity assessment form. He stated that Plaintiff could frequently lift and/or carry 10 pounds and occasionally lift and/or carry 20 pounds. She was able to stand and/or walk, and sit about 6 hours in an 8 hour work day. An assistive device was not medically necessary for ambulation. If Plaintiff needed to alternate standing and sitting, standard breaks and lunch periods would provide sufficient relief. Plaintiff was able to frequently climb ramps/stairs, and occasionally climb ladders/scaffolds. She could frequently balance, but could only occasionally stoop, bend, kneel, crouch or squat with support, and crawl. AR 483. Standard breaks and lunch would provide sufficient relief to allow work for 8 hours. AR 484.

Dr. Gasparre opined that Plaintiff's ability to reach was limited to rare overhead work. Fingering was limited on the right by pain from carpal tunnel, but she was able to use that hand occasionally. Plaintiff had no limitations with respect to hearing, seeing, speaking or traveling. She had no environmental limitations except for extreme temperatures. Dr. Gasparre stated: "Manipulative function of hands and fingers appears normal on exam. Carpal tunnel [and] cervical radiculopathy may limit function on right, but patient had no problem writing with right had and using hand to hold cigarettes." He also noted that Plaintiff's behavior was cooperative and appropriate, and there was no observation of functional overlay. AR 484.

Plaintiff underwent a psychological examination by Dr. Richard Lewis on May 4, 2010. AR 488-491. Plaintiff has not challenged the ALJ's finding at step two of the sequential evaluation process that she did not have a severe mental impairment. Nor has she contended that depression, anxiety or other mental impairments, either alone or in combination with her physical impairments, rendered her disabled.

On May 13, 2010, Raquel Hernandez, a State agency medical consultant, performed a physical residual functional capacity assessment. AR 507-514. She found that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of 6 hours in an 8-hour workday; and sit with normal breaks for a total of 6 hours in an 8-hour workday. Subject to the lifting and carrying restrictions, Plaintiff had unlimited ability to push and/or pull. She could frequently climb ramps or stairs and balance. She could occasionally climb ladders, ropes, or scaffolds, and could occasionally stoop, kneel, crouch, or crawl. AR 508-509.

Dr. Hernandez opined that Plaintiff's ability to reach in all directions, including overhead was limited. Fingering (fine manipulations) and feeling was limited. Handling (gross manipulation) was unlimited. Dr. Hernandez explained these limitations as follows: "Over head reaching limited to occasional. Fingering with right hand limited to occasional." AR 510. There were no visual or communicative limitations. The only environmental limitations were to avoid concentrated exposures to extreme cold and hazards such as machinery and heights. AR 511.

1   Dr. Hernandez indicated that her assessment was based on Dr. Gasparre's examination findings.

2   AR 514.

3       **C.    ALJ's Decision**

4       The ALJ applied the five-step sequential evaluation process established by the Social

5   Security Administration, 20 CFR 416.920(a), to determine whether Plaintiff was disabled. At

6   step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her

7   alleged onset date, January 1, 2008, and that she met the insured status requirements of the

8   Social Security Act through December 31, 2009.  AR 24.

9       At step two, the ALJ found that Plaintiff had the following medically determinable

10  impairments: bilateral carpal tunnel syndrome, degenerative disc disease of the cervical and

11  lumbar spine, and status-post cervical fusion.  She found that these medical impairments were

12  severe because they more than minimally limited Plaintiff's ability to perform basic work

13  activities.  The ALJ noted that the record also contained diagnoses for spina bifida occulta,

14  eczema, carotid stenosis, vitamin D deficiency, and hyperlipidemia, but these impairments were

15  not severe, either singly or in combination.  AR 24.   The ALJ found Plaintiff's depression and

16  anxiety were non-severe impairments because they caused no more than a minimal degree of

17  limitation on her daily activities, social functioning, or ability to maintain concentration,

18  persistence, or pace.  Plaintiff consistently exhibited normal mood, affect, and behavior.  The

19  ALJ accorded great weight to the opinions of the state agency psychological consultants and

20  examining psychologist, Dr. Lewis, who opined that Plaintiff was not disabled by psychological

21  impairments.  AR 25.

22      At step three, the ALJ found that Plaintiff's impairments did not meet or were not

23  medically equivalent to the severity of any of the listed impairments in 20 CFR Part 404, Subpart

24  P, Appendix 1 (20 CFR § 404.1520(d), § 404.1525 and § 404.1526).  AR 25-26.

25      Prior to step four, the ALJ found that Plaintiff had the residual functional capacity to

26  perform light work as defined in 20 CFR 404.1567(b), except that she would be unable to

27  perform repetitive climbing, could only perform postural activities occasionally, could perform

28  bilateral handling and fingering and overhead reaching frequently, and should avoid hazards

such as working at heights or operating dangerous moving machinery.  The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not entirely credible because she "reported that she is able to travel to California to visit family, take public transportation, clean her home, go to church, care for her dogs, socialize with family, do laundry, and perform dusting."  AR 26-27.

The ALJ stated that "[t]he objective medical evidence fails to provide strong support for Plaintiff's allegations of disabling symptoms and limitations." AR 27.  The ALJ noted that Plaintiff underwent a cervical fusion surgery in 2006, and thereafter treated with Dr. Nolan for ongoing neck and back pain.  Plaintiff's treating physicians consistently recommended conservative treatment for her neck pain, and "Dr. Nolan repeatedly noted the claimant's medications were effective in treating her pain."  AR 27.  Despite her complaints of pain, Plaintiff had a normal gait, and reported in April 2014 that her back pain had improved with conservative treatment.  While Plaintiff presented with positive bilateral carpal tunnel testing, she exhibited full bilateral grip strength and had no hand swelling.  AR 27.

The ALJ noted Dr. Nolan's February and August 2012 opinions that Plaintiff could sit, stand, or walk for less than 2 hours in an 8 hour work day.  She could lift less than 10 pounds, and could occasionally perform handling, pushing and pulling.  She could rarely perform fine manipulation and would have limited fine dexterity.  She could never climb, but could occasionally perform the remaining postural activities, and also occasionally drive.  The ALJ accorded partial weight to Dr. Nolan's opinion regarding Plaintiff's "occasional postural activities."  She accorded "little weight to Dr. Nolan's remaining limitations because I find the restrictions are excessive in light of the objective medical evidence including Dr. Nolan's own treatment records repeatedly noting that conservative treatment was effective in managing her symptoms."  AR 27.

The ALJ summarized the findings and opinions of Dr. Gasparre, who stated that Plaintiff could perform work at the light exertional level, but that "[s]he could rarely perform bilateral overhead reaching[, and] could perform occasional right-sided fingering and handling."  AR 27-28  The ALJ accorded little weight to these latter opinions "because I find the restrictions are

1    unsupported by clinical exam findings, including full grip strength, normal gait, and negative

2    bilateral straight leg raise test exhibited by the claimant." AR 28.

3         The ALJ also summarized the May 2010 residual functional capacity assessment by state

4    agency physician, Dr. Raquel Hernandez. AR 28. She accorded partial weight to Dr.

5    Hernandez's assessment that Plaintiff was able to perform light work, with occasional stooping,

6    kneeling, crouching, crawling, or climbing stairs, ropes or scaffolds with avoidance of hazards.

7    The ALJ, however, accorded little weight to her "restrictions for occasional overhead reaching,

8    occasional right-sided fingering, limited feeling, and avoidance of cold because I find the

9    limitations are excessive in light of the objective medical evidence, including the full grip

10    strength exhibited by the claimant." The ALJ stated that a limitation for frequent bilateral

11    handling and fingering, and frequent bilateral overhead reaching was proper based on her

12    assessment of the objective medical evidence. AR 28.

13         The ALJ stated that her determination of Plaintiff's residual functional capacity

14    adequately accounted for her alleged impairments. She briefly summarized the statements of

15    Plaintiff's sister, nieces, and boyfriend regarding her alleged limitations. The ALJ accorded

16    these statements little weight because of "their lack of medically acceptable standards, lack of

17    specificity, and general inconsistency with the objective medical evidence." AR 28.

18         In support of her residual functional capacity assessment, the ALJ noted that Plaintiff was

19    able to travel to California to visit family, take public transportation, clean her home, go to

20    church, care for her dogs, socialize with family, do laundry, and perform dusting. Plaintiff also

21    reported that she was able to prepare meals. The ALJ stated that "[c]onsideration of credibility

22    factors, including the claimant's wide range of reported activities from her testimony and

23    function reports, the conservative methods used to treat her neck pain following her 2006

24    surgery, and the repeated reports that her pain medication was effective, also render claimant's

25    allegations of disabling symptoms not fully credible." AR 28.

26         Based on her determination of Plaintiff's residual functional capacity, the ALJ found at

27    step four that she could perform her past relevant work as an insurance clerk. AR 29. The ALJ

28    made the alternative finding at step five that Plaintiff was capable of making a successful

1  adjustment to other work, and could perform the jobs of hand packer or folder as testified by

2  vocational expert Connie Guillory.  AR 30.  The ALJ therefore concluded that Plaintiff was not

3  disabled from January 1, 2008 to the date of her decision on June 6, 2014.  AR 31.

**DISCUSSION**

5  **I.    Standard of Review**

6        A federal court's review of an ALJ's decision is limited to determining (1) whether the

7  ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the

8  proper legal standards.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v.*

9  *Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  The Ninth Circuit has defined substantial evidence

10 as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

11 reasonable mind might accept as adequate to support a conclusion."  *Woish v. Apfel*, 2000 WL

12 1175584 (N.D. Cal. 2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see*

13 *also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001).  The Court must look to the record as a whole

14 and consider both adverse and supporting evidence.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir.

15 1993).  Where the factual findings of the Commissioner of Social Security are supported by

16 substantial evidence, the District Court must accept them as conclusive. 42 U.S.C. § 405(g).

17 Hence, where the evidence may be open to more than one rational interpretation, the Court is

18 required to uphold the decision.  *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (quoting

19 *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)); *see also Vasquez v. Astrue*, 572 F.3d

20 586, 591 (9th Cir. 2009).  The court may not substitute its judgment for that of the ALJ if the

21 evidence can reasonably support reversal or affirmation of the ALJ's decision.  *Flaten v. Sec'y of*

22 *Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

23       It is incumbent on the ALJ to make specific findings so that the court need not speculate

24 as to the findings.  *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (citing *Baerga v.*

25 *Richardson*, 500 F.2d 309 (3rd Cir. 1974)).  In order to enable the court to properly determine

26 whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings

27 "should be as comprehensive and analytical as feasible and, where appropriate, should include a

28 statement of subordinate factual foundations on which the ultimate factual conclusions are

based." *Lewin*, 654 F.2d at 635. In reviewing the administrative decision, the court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In the alternative, the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

## II.    Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that (a) he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). The five steps of the evaluation process are correctly outlined in the ALJ's decision and will not be repeated here.

. . .

. . .

. . .

. . .

17

III.    **Whether the ALJ Erred in Rejecting the Opinion of Plaintiff's Treating Physician.**

Plaintiff argues that the ALJ failed to provide sufficient reasons for rejecting the opinions of Plaintiff's treating physicians.  The ALJ gave little weight to Dr. Nolan's opinion that Plaintiff could only occasionally use her hands for handling, or pushing and pulling, and could rarely use them for fine manipulation.  Plaintiff argues that the ALJ substituted her own lay opinion for that of a medical professional.  *Plaintiff's Motion* (ECF No. 22), 5-7.  Defendant argues that the ALJ provided legitimate reasons for rejecting Dr. Nolan's opinions because his own treatment notes demonstrated that Plaintiff responded to medication, and the conservative treatment she received effectively managed her symptoms.  *Defendant's Cross-Motion* (ECF No. 22), 5-6.

A treating physician's medical opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2).  Even if the treating physician's medical opinion is not given controlling weight, it may be entitled to greater weight than the medical opinions of examining or reviewing physicians.  The weight to be accorded to a treating physician's opinion is determined by considering a number relevant factors, including (1) the length of the treatment relationship, (2) the nature and extent of the treatment relationship, (3) the extent to which the treating physician provides evidence to support his or her opinion, (4) whether the medical opinion is consistent with the record as a whole, (5) whether the treating physician is a specialist providing a medical opinion on issues related to her area of specialty, and (6) other factors which may tend to support or contradict the medical opinion.  *Id.*

Under the standards applicable to this case, more weight should generally be given to the opinion of a treating physician than to those of physicians who do not treat the claimant.  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The opinion of an examining physician is generally entitled to greater weight than that of a reviewing physician.  *Garrison*, 759 F.3d at 1012 (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).  The weight afforded to a reviewing physician's opinion depends on the degree to which she provides a supporting explanation for her opinions.  *Id.*  If a

treating physician's opinion is contradicted by another doctor's opinion, the ALJ can only reject it by providing specific and legitimate reasons supported by substantial evidence. *"This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight ... even if it does not meet the test for controlling weight.'" Id.* at 1012 (quoting *Orne v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)).

The ALJ rejected Dr. Nolan's opinion regarding the limitations on Plaintiff's ability to reach over-head and use her hands because they were "excessive in light of the objective medical evidence, including Dr. Nolan's own treatment records repeatedly noting that conservative treatment was effective in managing her symptoms." AR 27. Dr. Nolan's progress reports did not state or imply, however, that the medical treatment he provided relieved Plaintiff's neck, arm and hand symptoms to such an extent that she was able to frequently reach overhead or use her hands for frequent fingering or manipulation. To the contrary, Dr. Nolan stated in his July 13, 2009 report that Plaintiff continue to be symptomatic, but managed her conditions with commonsense precautions in all activities and use of medication. AR 461. On April 26, 2010, he noted that "[s]pasms in the hands with numbness in the three central digits bilaterally continues. Further aggravation occurs with repetitive use of the upper extremities involved in fine motor activity such as typing, writing, or keying and grasping while driving. . . . She seeks relief with modifying the activity and pacing, and use of oral medication." AR 569. These examples are representative of Dr. Nolan's findings throughout the course of treatment.

Dr. Nolan's opinion regarding Plaintiff's ability to reach overhead or use her fingers for manipulation was not contradicted by the examining and reviewing physicians.[1] Dr. Gasparre found that Plaintiff had full range of motion in both upper extremities and 5/5 grip strength in both hands. He nevertheless opined that her ability to reach was "limited to rare overhead work," and her ability to use her hands for fingering was "limited on right by pain from carpal tunnel, but [she was] able to use hand occasionally." *Id.* Dr. Hernandez based her assessment

---

[1] Dr. Gasparre and Dr. Hernandez disagreed with Dr. Nolan's opinions regarding Plaintiff inability to lift and carry any weight over 10 pounds, and with the restrictions he imposed on her ability to stand, walk, or sit during an 8-hour work day, and her need to take frequent unscheduled breaks. The ALJ did not focus on those differences in her decision.

that Plaintiff was limited to occasional over-head reaching and occasional fingering with the right hand on Dr. Gasparre's examination findings.

The ALJ rejected Dr. Gasparre's opinion because the restrictions were "unsupported by clinical examination findings, including full grip strength, normal gait, and negative bilateral straight leg raise tests."  AR 28.  The ALJ did not explain how a normal gait and negative bilateral straight leg tests was indicative of an ability to frequently reach overhead or finger with the right hand.  Dr. Gasparre and Dr. Hernandez were aware that Plaintiff had full grip strength in both hands. AR 486, 514.  Yet neither doctor stated this examination finding was inconsistent with Plaintiff's symptoms that limited her to occasional overhead reaching and fingering.  The ALJ rejected the opinions of all three physicians regarding Plaintiff's limited ability to use her arms and hands.  She could not, however, cite any medical opinion to support her contrary opinion that Plaintiff could frequently reach overhead or frequently use her hands for fingering.  The ALJ failed to provide specific and legitimate reasons supported by substantial evidence to reject Dr. Nolan's, Dr. Gasparre's and Dr. Hernandez's opinions regarding these limitations.

## IV.    Whether the ALJ Erred in Rejecting Plaintiff's Testimony.

If the claimant has presented sufficient evidence of an underlying physical or mental impairment that could reasonably cause her symptoms, then, absent of evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the credibility of the claimant's testimony regarding the severity of her symptoms.  *Burrell v. Colvin*, 775 F. 3d 1133, 1136-37 (9th Cir. 2014) (citing *Molinay v. Astrue*, 674 F. 3d 1104,1112 (9th Cir. 1991) (en banc); *Swenson v. Sullivan*, 876 F. 2d 683, 687 (9th Cir. 1989); and *Gallant v. Heckler*, 753 F. 2d 1450, 455 (9th Cir. 1984)).  The ALJ must state the reasons why the testimony is unpersuasive, and must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F. 3d 685, 693 (2009) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F. 3d 595, 599(9th Cir. 1999)).

The ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.  The rationale for this restriction is that pain testimony may establish greater limitations than can medical evidence

1    alone.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citing SSR 96–7p (1996)).  In

2    determining credibility, the ALJ may engage in ordinary techniques of credibility evaluation,

3    such as considering the claimant's reputation for truthfulness and inconsistencies in the

4    claimant's testimony.  *Id.* (citing *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001)).

5    The ALJ may also consider (1) the nature, location, onset, duration, frequency, radiation, and

6    intensity of any pain; (2) precipitating and aggravating factors (e.g., movement, activity,

7    environmental conditions); (3) type, dosage, effectiveness, and adverse side-effects of any pain

8    medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions;

9    and (6) the claimant's daily activities.  *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th

10   Cir. 1991)).

11          The Court is required to carefully scrutinize credibility findings based on alleged

12   inconsistencies between a claimant's ability to perform activities of daily living and her

13   complaints of severe pain or other disabling limitations.  "The Social Security Act does not

14   require that claimants be utterly incapacitated to be eligible for benefits, and many home

15   activities may not be easily transferable to a work environment where it might be impossible to

16   rest periodically or take medication."  *Garrison v. Colvin*, 759 F.3d at 1016 (quoting *Smolen*, 80

17   F.3d at 1287 n.7).  Only if a claimant's level of activity is inconsistent with her claimed

18   limitations would these activities have any bearing on her credibility.  *Id.* (citing *Reddick v.

19   Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).  The court in *Garrison* held that the ALJ made two

20   errors in discounting the claimant's credibility based on her ability to engage in activities of daily

21   living.  First, the ALJ mischaracterized the claimant's testimony regarding the extent to which

22   she could engage in various activities of daily living.  Second, the ALJ erred in finding that the

23   activities, if performed as the claimant described, would be inconsistent with her description of

24   pain related impairments.  *Id.* at 1016.

25           In rejecting the credibility of Plaintiff's statements and testimony, the ALJ cited the fact

26   that she travelled to California to visit family, took public transportation, attended church, cared

27   for her dogs, socialized with family, cleaned her home, did laundry and prepared meals.  AR 28.

28   Plaintiff's and her family members' descriptions of her daily activities belie the ALJ's

1   characterizations.  Plaintiff testified that she traveled to California every 60 days to see her

2   doctors, and was driven to these appointments by her boyfriend or took the bus.  While in

3   California, she visited with family members.  AR 50.  Plaintiff testified  that she lay on the couch

4   most of the day.  AR 87.  She attempted to perform " little spurts" of activity, such as loading

5   dishes in a dishwasher or preparing simple meals.   AR 383.  However, she experienced

6   significant pain after such activities, and therefore did as little as possible to avoid aggravating

7   her symptoms.  AR 92, 98.  She was also unable to hold objects such as dishes, pens or pencils.

8   AR 56, 97.  Plaintiff's descriptions of her activities of daily living were not inconsistent with her

9   statements regarding pain and physical limitations.  While the ALJ may have had doubts

10  regarding the severity of Plaintiff's symptoms, she cannot mischaracterize the Plaintiff's

11  testimony and rely on that mischaracterization to reject her credibility.  *Garrison, supra*.

12          The ALJ also discounted Plaintiff's credibility based on the fact that she only received

13  conservative medical treatment and because medication was effective in relieving her pain.[2]

14  Plaintiff had cervical spine surgery in 2006 and carpal tunnel release surgery on both wrists in

15  2005 and 2006.  She apparently suffered from significant symptoms in order to justify those

16  surgical procedures.  There was partial improvement in Plaintiff's neck and upper back

17  symptoms following the cervical spine surgery.  Her left wrist and hand substantially improved

18  after left carpal tunnel surgery.  However, the right hand symptoms did not improve with

19  surgery.  Neither Dr. Nolan nor any other physician recommended additional surgery or other

20  forms of treatment besides medication and physical therapy.  While this could indicate that

21  Plaintiff's post-surgical symptoms were not severe, it could also indicate that no treatment other

22  than pain medication, occasional physical therapy, and avoidance of stressful activity was likely

23  to improve Plaintiff's symptoms.  There is no evidence that Plaintiff failed to follow a prescribed

24  course of medical treatment or that she failed to seek reasonable medical evaluation of her

25  conditions.  Under these circumstances, the fact that Plaintiff received only conservative medical

26  treatment following her surgeries does not provide a clear and convincing reason for rejecting the

27  credibility of her statements regarding the severity of her pain.

28  _____
[2] The Court has already discussed the evidence regarding the efficacy of pain medication.

1    The ALJ's assessment that Plaintiff was able to perform light work, including frequent

2    bilateral handling and fingering and overhead reaching was not supported by substantial

3    evidence in the record.  Instead, the undisputed medical record supports a finding that Plaintiff

4    was limited to occasional overhead reaching and occasional manipulation and fingering with the

5    right hand.

6        Vocational expert Connie Guillory testified at the April 28, 2014 hearing that an

7    individual who was limited to occasional handling and fingering, would not be able to perform

8    Plaintiff's past work as an insurance clerk and telephone operator.  Nor would the individual be

9    able to perform the alternative jobs of office clerk, hand packer, and folder.  AR 66-68.  Ms.

10   Guillory indicated that there were other alternative jobs that the individual could perform with

11   that limitation, but the ALJ did pursue further inquiry as to those jobs.  AR 68-74.  Because the

12   ALJ's assessment of Plaintiff's residual functional capacity was not supported by the record, her

13   finding at step four of the sequential process that Plaintiff was able to perform her past work as

14   an insurance clerk was erroneous.  AR 29.  She also erred at step five in finding that Plaintiff was

15   able to perform the alternative jobs of hand packer and folder.  AR 30.

16       Plaintiff requests that this case be remanded with instructions to pay benefits.  In

17   *Garrison*, 759 F.3d at 1020, the court noted that the Ninth Circuit has adopted a three-part credit-

18   as-true test, pursuant to which the court may remand a case with instructions to calculate and pay

19   benefits.  Under this test, (1) the record must be fully developed, such that further administrative

20   proceedings will serve no useful purpose; (2) the ALJ must have failed to provide legally

21   sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3)

22   if the improperly discredited evidence is credited as true, ALJ will be required to find the

23   claimant disabled on remand.  Even if all conditions of the test are satisfied, however, remand for

24   further hearing is proper if the record as a whole creates serious doubt as to whether the claimant

25   is disabled.  *Id.* at 1021.  *See also Treichler v. Commissioner,* 775 F.3d 1090, 1101-02 (9th

26   Cir.2014) (agreeing with *Garrison's* statement that the district court has the discretion to

27   "remand for further proceedings when the record as a whole creates serious doubt as to whether

28   the claimant is disabled").

1    In this case, each part of the credit-as-true test is satisfied.  First, the record is detailed

2  and complete with respect to Plaintiff's symptoms, physical limitations, and residual functional

3  capacity.  Second, the ALJ failed to provide legally sufficient reasons to reject opinions of

4  Plaintiff's treating physician, the examining physician and the reviewing physician.  The ALJ

5  also failed to provide legally sufficient reasons for rejecting Plaintiff's statements and testimony

6  regarding the severity of her symptoms as they pertained to her ability to use her arms and hands

7  for reaching, manipulating and fingering.  Third, if the opinions of the physicians were credited

8  as true, and Plaintiff's testimony was also credited as true, then the ALJ would be required to

9  find that Plaintiff was disabled based on the record in this case.

10    There is no serious doubt based on an evaluation of the entire record that Plaintiff was

11  disabled within the meaning of Social Security Act  based on her inability to reach overhead or

12  manipulate or finger with her right hand, except on an occasional basis.  It would also be unfair

13  to remand this case for further hearing so the ALJ could obtain additional vocational expert

14  testimony regarding other jobs that Plaintiff may have been able to perform with her actual

15  limitations.  The ALJ eschewed the opportunity to obtain such evidence during the April 28,

16  2014 hearing.  She therefore failed to  meet the Commissioner's burden at step five to establish

17  that there were other jobs in the national economy that Plaintiff could perform with her

18  limitations.  *Tackett,* 180 F.3d at 1099.  This case was previously been remanded by the Appeals

19  Council based on the ALJ's (1) failure to determine whether Plaintiff had transferrable job skills,

20  (2) failure to provide an adequate evaluation of the treating, non-treating, and non-examining

21  medical sources, and (3) failure to explain her reasons for rejecting Dr. Gasparre's

22  opinion.  AR 134-137.  The ALJ should not be given a third opportunity to develop grounds for

23  denying benefits, especially where the vocational expert alerted her to the possibility that other

24  alternative jobs existed, but the ALJ did not pursue the matter.  **Accordingly,**

25  . . .

26  . . .

27  . . .

28  . . .

24

1

## **RECOMMENDATION**

2    **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and/or Remand

3    (ECF No. 22) be **granted** and that the Commissioner's Cross Motion to Affirm (ECF No. 23) be

4    **denied**.

5    **IT IS FURTHER RECOMMENDED** that this matter be remanded to the Social

6    Security Administration with directions to calculate and pay disability benefits to the Plaintiff.

7

## **NOTICE**

8    Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in

9    writing and filed with the Clerk of the Court within fourteen (14) days.  Appeals may be waived

10   due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142

11   (1985).  Failure to file objections within the specified time or failure to properly address and

12   brief the objectionable issues waives the right to appeal the District Court's order and/or appeal

13   factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th

14   Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

15   Dated this 31st day of October, 2018.

16

17   _____

18   GEORGE FOLEY, JR.
     UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28

25